IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| RANDALL PLAZA CENTER ) | Case No. 03 B 27883 |
| ASSOCIATES, L.P., ) | |
| ) | Honorable Carol A. Doyle |
| Debtor. ) | |
| ) | |
| FIRST AMERICAN BANK, SSB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 04 A 03505 |
| ) | |
| RANDALL PLAZA CENTER ) | |
| ASSOCIATES, L.P., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

This adversary proceeding is before the court on the cross-motions of First American Bank, SSB ("FAB") and Randall Plaza Center Associates, L.P. ("Randall Plaza") for summary judgment on the adversary complaint filed by FAB against Randall Plaza. For the reasons stated below, the court grants FAB's motion for summary judgment and denies Randall Plaza's cross-motion.

**I.   Issues**

The debtor, Randall Plaza, owned the beneficial interest in a land trust that owned a shopping center. FAB held a mortgage and assignment of rents for the property, foreclosed, and

is now the owner of the property. The question presented is whether FAB or Randall Plaza has the right to collect unpaid rent on the prime space in the shopping center. To resolve this question, the court must determine whether the assignment of rents to FAB was valid and, if so, whether FAB took the proper steps to enforce the assignment and obtain the right to collect rents. The court concludes that the assignment of rents was valid and properly perfected, that FAB took all the appropriate steps to enforce its lien, and that FAB is now the lessor under the lease. FAB is therefore entitled to collect all rent due from the date Randall Plaza received a notice of default in September 2000 forward.

## II.    Background and Facts

The relevant facts are undisputed. Randall Plaza was the owner of the beneficial interest in a land trust that owned Randall Plaza Shopping Center (the "Property"). In early 1999, Randall Plaza directed the land trust to execute a mortgage of the Property in favor of Southern Pacific Bank as security for a $3.1 million promissory note. FAB is Southern Pacific Bank's successor in interest to this mortgage. Article 2 of the mortgage "assigns and transfers to Mortgagee all rents" and further states that upon default of the mortgage, the mortgagee "shall have the right . . . [to] collect the rents and profits, including those past due and unpaid . . . ."

A portion of the shopping center was leased in 1986 to Lucky Stores, Inc. ("Lucky"). This lease terminates in 2013 and was assigned in 1987 to Eagle Food Centers, L.P. ("Eagle"). However, Lucky was not released from its liability on the lease. Lucky was later acquired by American Stores, which was then purchased by Albertson's. Eagle filed for bankruptcy protection in April 2003 and rejected its lease of Randall Plaza. Albertson's has failed to pay

rent, real estate taxes, or its share of the operating expenses since October 2003. FAB estimates that Albertson's owes approximately $504,130 for past due rent, taxes, and operating expenses and $3,626,000 in future payments for rent, taxes, and expenses. The dispute in this case centers on who is entitled to collect from Albertson's.

In June 2000, Randall Plaza defaulted on its mortgage. On September 22, 2000, FAB gave a Notice of Default to Randall Plaza and demanded immediate delivery of all rents. In February 2001, an Illinois state court appointed a receiver for the property; a few months later, Grubb & Ellis Management Services, Inc. ("Grubb & Ellis") was appointed substitute receiver. However, this action by the Illinois court was later held void, forcing FAB to file a second action in 2002 to appoint a receiver and foreclose on the mortgage. This action did not name Lucky, American Stores, or Albertson's as defendants. The state court again appointed Grubb & Ellis receiver and granted FAB a second judgment of foreclosure on May 14, 2003.

Randall Plaza filed for Chapter 11 bankruptcy protection on July 1, 2003. The case was converted to Chapter 7 in March 2004. In February 2004, this court granted FAB relief from the automatic stay to continue foreclosure proceedings on the Property and to pursue its interest in collateral. FAB continued its foreclosure action, was the successful bidder at the foreclosure sale held in March 2004, and took title to the property in April 2004.

In September 2004, FAB filed this adversary proceeding against Randall Plaza seeking a declaration that it is entitled to collect rents and profits derived from the Property from September 22, 2000 forward. Randall Plaza asserts that it is entitled to collect any amounts due under the Albertson's lease. The parties have filed cross-motions for summary judgment.

In its motion, FAB contends that it has a valid assignment of rents that it perfected by initiating foreclosure proceedings, having a receiver appointed, and ultimately taking title to the Property. Randall Plaza asserts that it has the right to collect unpaid rents due under the Albertson's lease for four reasons. First, it contends that FAB's assignment of rents was not valid because it was executed by the land trustee and not Randall Plaza, the beneficiary of the land trust. It therefore claims that FAB has no right to any rents due before it became owner of the Property through foreclosure in April 2004. Second, Randall Plaza claims that, even if the assignment of rents was valid, FAB is not entitled to the rents due before April 2004 because a mere security interest in rents does not entitle FAB to payment of the rents. Third, Randall Plaza maintains that, even if FAB had a valid and perfected lien on rents, the debt Randall Plaza owed was extinguished by merger when FAB took ownership through foreclosure, so there is no more debt to support the security interest in the rents that accrued before FAB became the owner of the Property. Finally, Randall Plaza asserts that, because FAB did not name Albertson's as a defendant in the foreclosure action and failed to specifically foreclose on the lease, Randall Plaza is still the owner of the lease and can collect rents even though FAB owns the real property.

As discussed below, none of these arguments has merit. Instead, the court concludes that FAB had a valid and perfected lien on the rents in question, took the appropriate and necessary steps to enforce its lien, and has the right to collect all rents owing from September 22, 2000 forward. Summary judgment will be granted on the adversary complaint in favor of FAB and against Randall Plaza.

### III. Standard on Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; see also Bellaver v. Quanex Corp., 200 F.3d 485, 491 (7th Cir. 2000). The function of the presiding court is not to weigh evidence and make credibility determinations or to attempt to determine the truth of the matter but, rather, "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986); see also Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990). The court views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from that evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356 (1986); Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000). The party moving for summary judgment "has the burden of showing the absence of a genuine issue of material fact." Pommier v. Peoples Bank Marycrest, 967 F.2d 1115, 1118 (7th Cir. 1992).

### IV. Assignment of Rents Was Properly Executed

Randall Plaza first seeks judgment on the basis that the assignment of rents executed by the land trustee as part of the mortgage documents was not effective. Randall Plaza argues that only the beneficiary of a land trust, not the trustee, has the right to receive rents and that the land trustee cannot transfer rights that it does not have. Illinois law does not support this argument.[1]

---

[1] The parties agree that Illinois law governs this dispute.

-5-

Land trustees hold both legal and equitable title to real property and are authorized to contract for their beneficiaries when directed in writing to do so by the beneficiaries. See In re Grocerland Coop., 32 B.R. 427, 431 (Bankr. N.D. Ill. 1983) (explaining that "the trustee may not act except on written authorization of the beneficiary") (internal quotation omitted); Jakovljevich v. Alvarez, 113 Ill. App. 2d 302, 306-08, 252 N.E.2d 60, 62-63 (1969);. See also Robinson v. Chi. Nat'l Bank, 32 Ill. App. 2d 55, 58, 176 N.E.2d 659, 661 (1961). That is precisely what happened here. On January 21, 1999, Randall Plaza directed the land trustee in writing to execute and deliver a "Mortgage, Assignment of Rents, Security Agreement and Fixture Filing" (the "Mortgage") to Southern Pacific Bank, FAB's predecessor in interest. Article 2 of the Mortgage is entitled "Assignment of Rents and Profits" and states, in relevant part, that the "Debtor hereby absolutely and unconditionally assigns and transfers to Mortgagee all rents . . . ." Section 2.2 of the Mortgage further states that "[u]pon the occurrence of an event of default under this Mortgage, . . . Debtor's license to collect the rents and profits shall terminate and [FAB] shall have the right . . . to collect the rents and profits . . . ." The Mortgage executed by the land trustee thus clearly assigns the rents to FAB.

Randall Plaza admits that it directed the trustee of the land trust in writing to execute the Mortgage and assignment of rents, but it asserts that the trustee had no right to the rents and so could not assign them to FAB. This argument is presumably based on the fact that land trust agreements provide that only the beneficiary, not the trustee, has the right to receive rents from property held in trust. However, this contractual allocation of rights as between the land trustee and the beneficiary does not prevent the trustee from executing a valid assignment of rents. Under common law, the owner of real property holds the right to collect rent. See e.g., Bellows

v. Ziv, 38 Ill. App. 2d 342, 351, 187 N.E.2d 265, 269 (1962); Glass v. Maresh, 299 Ill. App. 612, 19 N.E.2d 766 (1939). When property is owned by a land trust, it is the land trustee agreement that gives the beneficiary the right to receive rents that would otherwise go the trustee. Kress Rd. P'ship v. Chi. Title & Trust Co. (In re Kress Rd. P'ship), 134 B.R. 292, 297 (Bankr. N.D. Ill. 1991); Robinson, 32 Ill. App. 2d at 58, 176 N.E.2d at 661. If the trustee is directed in writing by the beneficiary of the land trust to execute an assignment of rents, the land trustee as the holder of legal and equitable title is a proper party to execute the assignment.

Randall Plaza cites no case holding that only a beneficiary can execute a valid assignment of rents or that a land trustee cannot execute such an assignment. Instead, it relies on two cases, neither of which addresses this issue. First, Levine v. Pascal, 94 Ill. App. 2d 43, 236 N.E.2d 425 (1968), concerned a priority dispute between a judgment lien creditor and a holder of an unperfected security interest over a beneficial interest in a land trust. The Levine court did not deal with whether a land trustee has the right to assign rents. Second, in Fid. Mut. Life Ins. Co. v. Harris Trust & Savs. Bank, 71 F.3d 1306 (7th Cir. 1995), the Seventh Circuit held that the "rents and profits rule" (which forbids enforcement of an assignment of rent until the mortgagee takes possession of the property) applies to both the land trustee and the trust's beneficiaries. Id. at 1308. Therefore, the mortgagee may not enforce an assignment of rents against the land trustee or the beneficiary of the land trust until some action has been taken to put the mortgagee in possession of the property (such as the appointment of a receiver). Id. However, the court did not address whether a trustee can execute a valid assignment of rents at the written direction of the beneficiary.

Randall Plaza also relies on *Henry W. Kenoe, Kenoe on Land Trusts* § 5.18 (1989). In § 5.18, Kenoe cautions that, when drafting a lease of property held by a land trust, if "the contractual aspects of the lease will be performed by the beneficiary, [the lease] may not be enforceable against the beneficiary since it is clearly established that the trustee is not the agent of the beneficiary and cannot bind him to any undertaking." Kenoe cites two cases for this proposition, including Conkling v. McIntosh, 324 Ill. App. 292, 58 N.E.2d 304 (1944), which, he states, "demonstrates that this result obtains even though the lease was executed by the land trustee at the written direction of the beneficiary." However, Conkling demonstrates no such thing. It involves a loan secured by property in a land trust, not a lease. The case stands for the unremarkable proposition that, when a note and trust deed both expressly provide that a lender has recourse against only the property held in the land trust and that the beneficiaries of the land trust shall have no personal liability, then the beneficiaries of the land trust cannot be held personally liable. Conkling, 324 Ill. App. at 295, 58 N.E.2d at 305.

More importantly, the Kenoe passage cited by Randall Plaza addresses whether a land trustee can bind the beneficiary to perform contractual duties under a lease. It does not address the question at hand—whether a trustee can assign rents in connection with mortgage documents executed at the written direction of the beneficiary. In fact, Kenoe expressly recognizes that land trustees typically execute assignments of rents in connection with financing transactions for land trusts and provides a form for this purpose. In § 5.32, Kenoe states that assignment of rent "instruments are ordinarily executed by the land trustee subject to very carefully constructed exoneration provisions and a disclaimer on the part of the land trustee of any obligations to implement the document or to sequester the rents or income from the property." *Kenoe*, supra, at

§ 5.32. Kenoe also notes that a question may be raised if the beneficiary of the land trust does not specifically sign the assignment of rents when the beneficiary (rather than the trustee) executes a lease, because a tenant may question an assignment of rents by someone other than the lessor. Id. § 5.33, at 5-129. However, that concern is not relevant here. Instead, as the parties have stipulated in this case, the trustee of a land trust that previously owned the Property executed the lease in question, so the trustee of the successor land trust is the proper party to execute a valid assignment of rents.

Randall Plaza cites no authority requiring a beneficiary of a land trust to execute an assignment of rents in any circumstances, let alone when the beneficiary has specifically directed the land trustee in writing to execute the assignment and the leases were executed by a predecessor land trust, not the beneficiaries. The court concludes that the assignment of rents executed by the trustee is valid and enforceable.

### V.     FAB Is Entitled to the Assigned Rents

Randall Plaza next argues that, even if the assignment of rents is valid, FAB is not entitled to rents due before it took ownership of the Property because a mere security interest in rents does not convey title to them. While this may be true, it makes no difference here because FAB took the appropriate steps to own the right to collect the rents.

#### A.     Procedure for Enforcing Assignment of Rents

In Illinois, an assignment of rents creates a valid lien on rental income. In re Wheaton Oaks Office Partners Ltd. P'ship, 27 F.3d 1234, 1242-43 (7th Cir. 1994); Bagley v. Ill. Trust &

Savs. Bank, 199 Ill. 76, 79, 64 N.E. 1085, 1086 (1902); First Nat'l Bank of Joliet v. Ill. Steel Co., 174 Ill. 140, 147, 51 N.E. 200, 202 (1898). This security interest is perfected upon the recording of the instrument assigning the interest "without the assignee taking any other affirmative action." 765 ILCS 5/31.5(b). The Illinois Commercial Code does not apply to interests in rents. Travelers Ins. Co. v. First Nat'l Bank of Blue Island, 250 Ill. App. 3d 641, 645, 621 N.E.2d 209, 213 (1993).

However, while an assignment of rents "creates a security interest in rents that is perfected as to third parties[,] . . . [a]s between the mortgagee and the mortgagor, . . . the mortgagee is not entitled to the rents until the mortgagee or a receiver appointed on the mortgagee's behalf has taken actual possession of the real estate after default." Bank of Edwardsville v. J.D. Monarch Dev. Co. (In re J.D. Monarch Dev. Co.), 153 B.R. 829, 832 (Bankr. S.D. Ill. 1993) (citation omitted) (collecting cases). In other words, an assignment of rents "gives the mortgagee the right to collect rents as an incident of possession of the mortgaged property, and the mortgagee, after default, must take affirmative action to be placed in possession of the property to receive such income." Id. at 832-33; see also Jones v. Salem Nat'l Bank (In re Fullop), 6 F.3d 422, 430 (7th Cir. 1993) (noting that "[a] creditor ordinarily perfects a lien on rents . . . by initiating foreclosure proceedings that place it in actual possession of the real estate or requesting an appointment of a receiver"); Anna Nat'l Bank v. Prater, 154 Ill. App. 3d 6, 17, 506 N.E.2d 769, 776 (1987) (explaining that "a clause in a real estate mortgage pledging rents and profits creates an equitable lien upon such rents and profits on the land, which may be enforced by the mortgagee upon default by taking possession of the mortgaged property").

A mortgagee need not actually possess the property in order to collect on its assignment of rents. Rather, the modern trend is to permit a "mortgagee to collect rents once it has taken constructive, as opposed to actual, possession of the property." Comerica Bank-Illinois v. Harris Bank Hinsdale, 284 Ill. App. 3d 1030, 1034, 673 N.E.2d 380, 382 (1996). For example, courts have allowed mortgagees to collect rents after the mortgagees have taken affirmative action to take possession of the property, by obtaining an injunction or by having a receiver appointed. Comerica Bank, 284 Ill. App. 3d at 1034, 673 N.E.2d at 382-83; see also De Kalb Bank v. Purdy, 166 Ill. App. 3d 709, 716, 520 N.E.2d 957, 962 (1988).

### B.  FAB Took Proper Steps to Enforce its Right to Receive Rents

In this case, FAB is entitled to collect rents on the property because a valid assignment of rents was executed in its favor and it took appropriate steps to enforce its lien. The Mortgage granting FAB an assignment of rents was properly recorded in February 1999, giving FAB a security interest in Randall Plaza rents. See First Nat'l Bank of Joliet, 174 Ill. at 147, 51 N.E. at 202; J.D. Monarch, 153 B.R. at 832. After Randall Plaza defaulted on this Mortgage in June 2000, FAB declared a default on September 22, 2000 and properly sought possession of the Property. FAB filed two foreclosure actions and twice had a receiver appointed for the Property. In November 2002, the state court appointed a receiver for the Property for a second time, after the first order was vacated, and in March 2003 a default judgment of foreclosure was entered. FAB took possession of the Property in 2001 and again in 2002, purchased the property at the foreclosure sale in March 2004, and received title in April 2004. Thus, it both initiated foreclosure proceedings and obtained the appointment of a receiver, the two ways that

mortgagees may gain possession of property for purposes of collecting rent. See e.g., Fullop, 6 F.3d at 430. FAB now owns and operates the shopping center, so there can be no question that it is entitled to collect the rents assigned to it. The assigned rents includes all rents that were unpaid at the time FAB gave notice of the default. Section 2.2 of the Mortgage provides that, upon default, the "Debtor's license to collect the rents and profits shall terminate" and that FAB "shall have the right . . . to collect the rents and profits, *including those past due and unpaid* . . . ." Therefore, FAB may collect any unpaid rent that was due on September 20, 2000 or any time thereafter.

## VI.   Merger Does Not Preclude FAB from Collecting Past Due Rent

Randall Plaza's next argument, that FAB's purchase of the Property extinguished both the Mortgage and the lien on rents, is also without merit. When a mortgagee becomes the owner of mortgaged property, "[t]he merger extinguishes the debt for which the mortgage was security." In re Ozier, 225 Ill. App. 3d 33, 36, 587 N.E.2d 77, 80 (1992). The cases cited by Randall Plaza hold that the merger of title to property and ownership of the mortgage debt extinguishes the debt of the mortgagor to the mortgagee. See, e.g., Priess v. Buchsbaum, 332 Ill. App. 565, 76 N.E.2d 195 (1947). None of the cases relied upon by Randall Plaza, however, supports the conclusion that FAB's purchase of the Property extinguished not only the mortgage debt owed by Randall Plaza but also the rents owed to FAB by virtue of its lien on rents.

While FAB's purchase of the shopping center cancelled the debt owed by Randall Plaza to FAB, it did not affect the rents due from the lessees under their leases for the shopping center. An express pledge of rents is not extinguished by a foreclosure sale which merges the title and the debt in the same party. Liss v. Harris, 26 N.E.2d 133, 137 (1940) (stating that lien on rents

"was not extinguished by the sale of the land"); Owsley v. Neeves, Gen. No. 17,459, 1913 WL 2253, at *3 (Ill. App. Ct. Apr. 1913). The rents that were due from September 2000 to April 2004 were security for the amount owed by Randall Plaza. That debt was determined in the judgment of foreclosure to be approximately $3.6 million. FAB bid $2.1 million for the property at the foreclosure sale, so over $1.5 million remains to be paid. While FAB cannot pursue Randall Plaza for this amount, FAB may pursue Albertson's for unpaid rent that was due from September 2000 to April 2004, the amount of which is significantly less than the $1.5 million unpaid balance on the loan. FAB may also pursue Albertson's for any unpaid rent due from April 2004 forward without regard to the deficiency balance from the foreclosure action.

## VII   FAB Need Not Separately Foreclose on the Lease

Finally, Randall Plaza contends that it still owns the Albertson's lease, including the right to collect rent under it, because FAB did not specifically foreclose on that lease. Randall Plaza cites no law supporting this assertion. A mortgagee need not institute a separate foreclosure proceeding on a lease, because a purchaser of property steps into the shoes of the previous owner and takes the property subject to existing valid leases. Bellows, 38 Ill. App. 2d at 351, 187 N.E.2d at 269; see also Wheaton Oaks, 27 F.3d at 1241 ("Illinois adheres to the general rule that rents are an incident of possession."); Hargrave v. Phillips, 394 Ill. 119, 123, 67 N.E.2d 281, 283 (1946) ("[U]naccrued rents are not personal property. They are incorporeal hereditaments. They are an incident to the reversion and follow the land."); U.S. Fid. & Guar. Co. v. Old Orchard Plaza Ltd. P'ship, 284 Ill. App. 3d 765, 773, 672 N.E.2d 876, 882 (1996) (noting that "the right

to collect rents lies with the possessor"). Randall Plaza's argument that it somehow now owns the lease even though it does not own the Property is frivolous.

## VIII. Conclusion

For the reasons stated, the court concludes that FAB is entitled to collect the rents of Randall Plaza from June 2000 forward. The "Assignment of Rents and Profits" clause in the Mortgage assigned to FAB created a valid lien on these rents which FAB properly enforced by seeking a receiver and foreclosing on the Property. Summary judgment is therefore granted to FAB on its adversary complaint. Randall Plaza's cross-motion is denied.

June 6, 2005

ENTERED:

_____
CAROL A. DOYLE
United States Bankruptcy Judge